## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

AVID TELECOM, LLC,          )
an Arizona Limited Liability Company,   )
                       )
and                    )
                       )
MICHAEL LANSKY, an individual.    )
                       )
        Plaintiffs,       )
                       )
      v.             )    Civil Action No.
                       )
TRANSNEXUS, LLC,         )
a Georgia Limited Liability Company    )
                       )
                       )
        Defendant.      )

## COMPLAINT

Plaintiffs Avid Telecom, LLC ("Avid Telecom") and Michael Lansky (collectively "Plaintiffs"), by and through their undersigned attorneys, hereby file this complaint for damages against TransNexus, LLC ("TransNexus"), stating as follows.

## INTRODUCTION

1.    Avid Telecom has operated as a common carrier provider of telecommunications services since 2001. The company specializes in the delivery

of automated calls for its customers to persons who have authorized Avid Telecom's calling party customers to place those calls. In providing telecommunications services to its customers, Avid Telecom is fully compliant with all federal and state laws governing its operations generally, and specifically as it relates to the transmission of auto-dialed calls. Among other things, Avid Telecom refuses to do business with international organizations responsible for most of the illegal robocalls in the United States. Indeed, due to Avid Telecom's aggressive efforts to prevent illegal robocalling, it acts as a firewall, preventing millions of illegal robocalls from being completed each year.

2.      Yet, despite Avid Telecom's careful compliance with all applicable laws, the company has been victimized by politicians, industry groups, and other unsavory entities who are motivated by profit and/or to score points in the media and with the public by targeting robocall companies.

3.      One such company is TransNexus. On November 15, 2022, TransNexus published a transcript of a skype conversion showing one of the participants seeking to break the law by "masking" illegal robocalls and legitimate calls so they would not get "flagged" by federal investigatory agencies. However, rather than identifying the actual participant in the skype, TransNexus published a doctored version that alleged one of the parties to be Michael Lansky, the CEO of

2

Avid Telecom. TransNexus's doctored transcript was published on its blog, and then picked up and republished on numerous other platforms.

4.      To be clear, Mr. Lansky was not part of the skype conversation.  In fact, the original, un-doctored transcript of the conversation is part of a public complaint filed by the Indiana Attorney General. The accurate, publicly available transcript clearly shows that the quoted party was made by a man identified as "onlywebleads." TransNexus replaced the name "onlywebleads" with "Lansky."

5.      It is hard to view the TransNexus conduct as innocent or disinterested. Indeed, the only way for the changes to have been made would be for someone at TransNexus to *physically retype*  the name "onlywebleads" and replace it, *multiple times*, with name "Lansky.  It is not conceivable that anyone could or would have done that by mistake. The much more logical explanation is that TransNexus, as a provider of software utilized by telecommunications companies to address robocalling, had a specific and direct financial interest in publishing scandalous allegations of wrongful conduct by carriers.  Indeed, the publication of these scandalous allegations was plainly designed to achieve a direct economic benefit for TransNexus in two ways.  First, the publication of these allegations was designed to foster direct engagement with the blog by readers as well as the republication of the blog by third party publishers—thereby placing TransNexus in the public eye on an

issue of significant interest in the telecommunications industry. Second, and perhaps more directly, the publication of these allegations was designed to stimulate the sales of the TransNexus ClearIP and NexOSS software, which is promoted as helping customers to prevent robocalling.

6.     The TransNexus blog labels Avid Telecom as an illicit robocall company headed by a CEO who breaks the law. That outcome was achieved. In a matter of days, Avid Telecom's providers were citing to the false TransNexus article as reason to cut ties with Avid Telecom.   Avid Telecom and Mr. Lansky have no choice but to seek to correct this record and hold TransNexus accountable for its deliberately false publication.

## PARTIES

7.     Avid Telecom is an Arizona Limited Liability Company with a primary office location at 2830 N. Swan Road, Suite 160, Tucson, Arizona.  Avid Telecom operates as a common carrier provider of long-distance telecommunications services.  Lansky is the sole member of Avid Telecom.

8.     Michael Lansky is an adult individual in and citizen of Pima County, Arizona. Mr. Lansky is the CEO of Avid Telecom.

9.     TransNexus is a Georgia Limited Liability Company with its principal offices located at 590 Thornton Road, Suite C, Lithia Springs, Georgia.  According

to the company website, TransNexus offers software for telecom service providers,
managed service providers, and enterprises around the world.  On information and
belief, each of the members of TransNexus is a citizen of Georgia.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332
as Plaintiffs and Defendants are citizens of different states and the damages sought
by Plaintiffs exceed Seventy-Five Thousand Dollars ($75,000).

11.     This Court has personal jurisdiction over Defendant in that it is engaged
in one or more of the following activities (i) TransNexus is registered to do business
as a domestic business entity in the State of Georgia and it regularly sells the
described services from those offices to the public at large; (ii) TransNexus has
engaged in substantial business activities within the State of Georgia; (iii)
TransNexus has offices, equipment and employees in the State of Georgia; (iv)
TransNexus has advertised its goods and services in the State of Georgia; (v)
TransNexus has sold the described services and products to entities located within
the State of Georgia; (vi) TransNexus has purposefully directed tortious activities
against Plaintiffs from the State of Georgia and thereby intended to and did in fact
initiate injury to Plaintiffs from within the forum; (vii) Plaintiffs' claims all arise out
of Defendant's purposeful conduct; and (viii) the Court's exercise of jurisdiction is

reasonable.  The specific facts supporting these allegations are set forth below and incorporated herein and will be further established through the discovery process.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c) in that a substantial part of the events giving rise to this case occurred in this judicial district and Defendant is subject to personal jurisdiction in this judicial district.

## FACTS

13.     On November 15, 2022, TransNexus published a blog entitled "Robocall friendly provider says legal environment is brutal" (the "TransNexus Blog").  A true and accurate copy of the TransNexus Blog is attached as Exhibit A.

14.     The TransNexus Blog was aggregated and republished by at least one news source, Telecom Reseller, which purports to have a "global readership" of individuals and companies in the telecom industry.  Upon information and belief, the TransNexus Blog was sent to over 50,000 separate individuals and businesses within the telecom industry.

15.     In that blog post, TransNexus makes repeated false statements of fact regarding Avid Telecom and its CEO, Michael Lansky.

16.     One such false and defamatory representation is in the form of a flow chart that inaccurately shows Avid Telecom to operate downstream from numerous companies who are known to be illicit robocall providers:

6



*Figure 1. Robocall-Friendly Providers Involved in Investigation*

17.    In reality, Avid Telecom has no business relationship with any of the identified companies, does not complete calls for any of the identified carriers, and never operates as the last carrier in the string of carriers delivering calls.

18.    The second false and defamatory representation is in the form of a doctored transcript, which purports to show a conversation between a "Lansky" and an "Anand":

**Lansky**: We wanted to make sure you saw that the FCC issued another round of cease-and-desist letters against three voice service providers for apparently transmitting illegal robocall traffic… Did you take care of this by contacting the Traceback group or the FCC and letting them know how you plan to take steps to prevent this type of scam traffic?

**Anand**: yes sir thats why i am shutting down the companies

**Lansky**: Your shutting down the companies and doing what?

**Anand**: i am shutting down this companies. i will not be included in any companies. i will work from the backend. company owners will be different

**Lansky**: Who is the owner?

**Anand**: me only sir. the name is different. i will be only paying you. on paper my name will not be there. now you understand?

**Lansky**: Yes, I got it

---

**Lansky**: What kind of content would you like to get out to the world

**Anand**: Crypto calls, banking calls, amazon calls, microsoft calls…

**Lansky**: Amazon calls for scams or other types of calls? And if they are for scams how can we mask them as real marketing so that they don't get flagged by the FTC or fcc?

**Anand**: yes for scam sir as you already know press 1 and robodialing is stopped so people started buying popup calls and the people who generate this they getting good money for each call.

19.   ***This conversation never occurred***.

20.   As shown in the below language taken from paragraphs 34 and 40 of the Verified Petition to Enforce Civil Investigative Demand, filed by the Indiana Attorney General on November 1, 2022,[1] the conversation that TransNexus purports to quote was between "Frank Murphy" (allegedly a pseudonym for Prince Anand,

---

[1] A copy of the Verified Petition is attached as Exhibit C hereto.

who has no relationship whatsoever to Avid Telecom or to Mr. Lansky) and a third party (*i.e.,* onlywebleads, allegedly a pseudonym for John Spiller, who has no relationship whatsoever to Avid Telecom or to Mr. Lansky); ***it was demonstrably not between Mr. Anand and Mr. Lansky***.

21.   ***Every statement that TransNexus alleges to have been made by Mr. Lansky on behalf of Avid Telecom was, in fact, made by onlywebleads***. The original transcript actually reads as follows:

> 34. On October 24, 2021, Spiller and Anand had this exchange:
>
> > onlywebleads - 10/24/2021 7:40:25 AM
> > > We wanted to make sure you saw that the FCC issued another round of ceaseand-desist letters against three voice service providers for apparently transmitting illegal robocall traffic. The letters, sent respectively to Duratel, Primo Dialler, and PZ/Illum Telecommunication demand each provider to "immediately cease originating illegal robocall campaigns on their networks." Otherwise, the letters warn that other network operators will be authorized to block all traffic from that provider if it does not take steps to effectively mitigate traffic within 48 hours, or fails to inform the FCC and the Industry Traceback Group, in its role as the Traceback Consortium, within fourteen days of the steps taken to implement effective measures to prevent their clients from using its network to make illegal calls. Did you take care of this by contacting the Traceback group or the FCC and letting them know how you plan to take steps to prevent this type of scam traffic? This has to be done first before this cease and desist letter will be wrapped up
> > Frank Murphy - 10/24/2021 8:11:13 AM
> > > yes sir thats why i am shutting down the companies
> > onlywebleads - 10/24/2021 8:13:20 AM
> > > Your shutting down the companies and doing what?
> > onlywebleads - 10/24/2021 8:13:42 AM
> > > Your not going to use Voip Telecom minutes any more?
> > Frank Murphy - 10/24/2021 8:14:38 AM
> > > i am shutting down this companies
> > Frank Murphy - 10/24/2021 8:14:48 AM
> > > i will not be included in any companies
> > Frank Murphy - 10/24/2021 8:14:55 AM
> > > i will work from the backend
> > Frank Murphy - 10/24/2021 8:15:04 AM
> > > company owners will be different
> > onlywebleads - 10/24/2021 8:15:27 AM
> > > What does that mean? Will you be able to stop sending the scam traffic?
> > onlywebleads - 10/24/2021 8:15:49 AM
> > > And will they be using me for their VoIP Telecom traffic?
> > onlywebleads - 10/24/2021 8:16:02 AM
> > > And when will this take place?
> > Frank Murphy - 10/24/2021 8:16:07 AM
> > > from monday
>
> 8

Frank Murphy - 10/24/2021 8:16:14 AM
    you will get a new signup
Frank Murphy - 10/24/2021 8:16:21 AM
    from one eye llc
Frank Murphy - 10/24/2021 8:16:24 AM
    today
onlywebleads - 10/24/2021 8:17:52 AM
    Will they be able to stop sending scam traffic or not? Because that
    company will also get shut down if they can't stop the scam traffic
Frank Murphy - 10/24/2021 8:23:01 AM
    They will stop sir
    [. . .]
onlywebleads - 10/24/2021 9:01:49 AM
    Who is the owner?
Frank Murphy - 10/24/2021 9:02:21 AM
    [. . .] me only sir
Frank Murphy - 10/24/2021 9:02:26 AM
    the name is different
Frank Murphy - 10/24/2021 9:02:38 AM
    [. . .] i will be only paying you
Frank Murphy - 10/24/2021 9:02:56 AM
    on paper my name will not be there
Frank Murphy - 10/24/2021 9:03:01 AM
    now you understood ?
onlywebleads - 10/24/2021 9:03:40 AM
    Yes I got it

Exhibit 4 at SKYPE005245 – 48.

40. On January 11, 2022, Spiller and Anand had this conversation:

onlywebleads - 1/11/2022 12:26:33 PM
    What type of content would you like to get out to the world
Frank Murphy - 1/11/2022 12:27:11 PM
    Crypto calls
    banking calls
    amazon calls
    microscoft calls
onlywebleads - 1/11/2022 12:29:55 PM
    Amazon calls for scams or other type of calls?
onlywebleads - 1/11/2022 12:30:34 PM
    And if they are for scams how can we mask them as real marketing so that
    they don't get flagged by the FTC or fcc?
Frank Murphy - 1/11/2022 12:35:17 PM
    [. . .] yes for scam sir as you already know press 1 and robodialing is
    stopped so people started buying popup calls
Frank Murphy - 1/11/2022 12:35:38 PM
    and the people who generates this they getting good money for each call

Exhibit 4 at SKYPE005381.

22.    Neither Avid Telecom nor Mr. Lansky is mentioned in the November

1, 2022, Attorney General Petition.

23.     The false statements about Plaintiffs were made intentionally, or with reckless disregard for their truth.

24.     On information and belief, TransNexus intentionally replaced the name "onlywebleads" with the name "Lansky" in a deliberate and malicious effort to damage Avid Telecom's business and the personal reputation of Mr. Lansky.

25.     The false statements made about Plaintiffs were made by TransNexus in the hope that such statements would force Avid Telecom's providers and customers to cease doing business with Avid Telecom and thereby drive the company out of business.

26.     In an effort to mitigate its damages, Avid Telecom and Mr. Lansky sent a letter on November 16, 2022, demanding that TransNexus immediately take each of the following actions: (i) execute and deliver to Avid Telecom the "Statement of Apology and Retraction" attached as Exhibit B —***no other publication of the Statement is to be made by TransNexus without Avid Telecom's express prior written consent***; (ii) provide complete data identifying each and every location in which the TransNexus Blog was published, whether in an electronic or paper format, including all websites, blogsites or other social media or similar venues of any kind; (iii) provide complete data identifying each and every person to whom the TransNexus Blog was delivered, either electronically (*e.g.,* by email) or in a hard

11

copy format; (iv) provide complete data as to the number of visitors to each website and blogsite on which the TransNexus Blog was published; (v) remove all versions on the TransNexus Blog in all forms, print or electronic, from all published locations and certify that such removal has occurred; (vi) identify each and every person, and/or entity of any kind (private or governmental) that provided any information, content and/or data to TransNexus that was utilized in the drafting or the presentation of the TransNexus Blog; and (vii) identify each and every person, and/or entity of any kind (private or governmental) that requested, encouraged or was otherwise involved in the decision to draft and/or to publish the TransNexus Blog.

27.    TransNexus has failed to undertake any of these actions. TransNexus published a statement it calls a "retraction," but which fails to actually give readers a clear understanding of how the original post was false, and which falsely claims that TransNexus relied on incorrect public documents. The public documents were, of course, correct, and it was TransNexus that altered them.

28.    The net effect of the "retraction" is zero. Indeed, upon Avid Telecom's relaying of the "retraction" to a significant lost customer, that customer did not indicate that the retraction made any difference, and continued to refuse to do business with Avid Telecom.

**FIRST CLAIM FOR RELIEF**
**(Defamation-Avid Telecom)**

29.     Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

30.     Defendant published false statements about Avid Telecom to members of the telecommunications industry through the TransNexus Blog.  These statements included the false association of Mr. Lansky, Avid Telecom's CEO, with a statement actually made by an unrelated third party suggesting that Avid Telecom and a third party "mask" certain illegal robocalls as "real marketing so that they do not get flagged by the FTC or FCC [sic]."

31.     Although the circulation of the TransNexus Blog is presently unknown, on information and belief, it is widely circulated, and the contents are frequently republished and quoted in other industry and business publications.

32.     Each of these statements was made with actual malice, that is, with actual knowledge of its falsity or with reckless disregard for the truth.

33.     It was reasonable and foreseeable, and in many cases the intended consequence, that these statements would be repeated, republished, and amplified by third parties.

34.    It was reasonable and foreseeable, and in many cases the intended consequence, that these statements would be the cause in fact of decisions by providers and customers of Avid Telecom to cease doing business with the company. In fact, that consequence has already manifested.

35.    Defendant has failed to correct the false statements of fact that it has published or to retract these statements upon demand by Plaintiffs.

36.    As the false statements made by Defendant were directed at Avid Telecom in the conduct of its business, accuse Avid Telecom of unlawful activity and bring Avid Telecom into disrepute, contempt, or ridicule, and impeach its honesty, integrity, virtue, and/or reputation, they constitute defamation *per se*.

37.    As a result of the false statements published by TransNexus, Avid Telecom has lost vendors and suffered actual damages, resulting in libel *per quod*.

38.    On information and belief, Defendant had a financial motivation to publish the false statements, *inter alia*, because Defendant is in the business of selling software that purports to help identify illegal robocalling.

39.    Defendant had no applicable privilege or legal authorization to make any of the false or defamatory statements or, if it did, it abused that privilege in a manner that rendered it null and void.

40.     As a direct and proximate result of the unlawful actions of Defendant, Avid Telecom has suffered, and will continue to suffer, damages in an amount yet to be determined but reasonably believed to be in excess of $75,000.

41.     Defendant's conduct was willful, malicious, wanton, and oppressive or was undertaken with the entire want of care that would raise the presumption of conscious indifference to consequences.  Defendant further acted, or failed to act, with specific intent to cause harm to Plaintiffs, including harm to their rights and business and personal reputations. Avid Telecom is, therefore, entitled to an award of exemplary and punitive damages under O.C.G.A. § 51-12-5.1(b), which it so requests.

## SECOND CLAIM FOR RELIEF
### (Invasion of Privacy By False Light-Michael Lansky)

42.     Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

43.     Mr. Lansky is a private figure.

44.     Defendant published false statements about Plaintiffs including by and through the TransNexus Blog.

45.     The statements falsely attributed to Mr. Lansky suggest that he was engaged in unlawful conduct, an associate of known illicit businessmen, and engaged in a willful effort to deceive regulatory authorities.

46.     These statements, and the imputation of deceitful and illegal conduct, were highly defamatory and highly offensive to Mr. Lansky.  On information and belief, these statements would also be highly offensive to any reasonable person.

47.     Each of these statements was made with actual malice, that is, with actual knowledge of its falsity or with reckless disregard for the truth.

48.     It was reasonable and foreseeable, and the intended consequence, that these statements would be repeated, republished and amplified by third parties, including by state attorneys general.

49.     It was reasonable and foreseeable, and in many cases the intended consequence, that these statements would be the cause in fact of decisions by providers and customers of Avid Telecom to cease doing business with the company. In fact, that consequence has already manifested.

50.     Defendant has failed to correct the false statements of fact that they have published or to retract these statements upon demand by Mr. Lansky.

51.     As the false statements made by Defendant were directed at Mr. Lansky in the conduct of his business, and bring Mr. Lansky into disrepute, contempt, or

ridicule, and impeach his honesty, integrity, virtue, and/or reputation, they constitute defamation *per se*.

52.    On information and belief, Defendant had a financial motivation to publish the false statements, *inter alia*, because Defendant is in the business of selling software that purports to help identify illegal robocalling.

53.    Defendant had no applicable privilege or legal authorization to make any of the false or defamatory statements or, if it did, it abused that privilege in a manner that rendered it null and void.

54.    As a direct and proximate result of the unlawful actions of Defendant, Mr. Lansky has suffered, and will continue to suffer, damages in an amount yet to be determined but reasonably believed to be in excess of $75,000.

55.    Defendant's conduct was willful, wanton, and oppressive or was undertaken with the entire want of care that would raise the presumption of conscious indifference to consequences.  Defendant further acted, or failed to act, with specific intent to cause harm to Plaintiffs, including harm to their rights and business and personal reputations. Mr. Lansky is, therefore, entitled to an award of exemplary and punitive damages under O.C.G.A. § 51-12-5.1(b), , which he so requests.

**THIRD CLAIM FOR RELIEF**
**(Tortious Interference with Actual and Prospective Business Relationship-**
**Avid Telecom)**

56.    Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

57.    Avid Telecom was party to a business relationship with a significant vendor.  Under the terms of that relationship, Avid Telecom delivered calls to this vendor, which either passed the call on to another downstream carrier or terminated the call to the called party.

58.    Defendant published the false statements set forth above.   The publication of these false statements was wrongful and improper and without right or privilege.

59.    The publication of these false statements was done purposefully and maliciously with intent to injure and interfere with Avid Telecom's actual and prospective business relationships, including its relationship with the significant vendor referenced above.

60.    Defendant knew or should have known that the publication of the false statements would place Avid Telecom's business relationships with its carriers and its customers, including the referenced vendor, in jeopardy.

61.   Defendant knew or should have known of the business relationship between Avid Telecom and its carriers and customers, including the referenced vendor.

62.   Defendant was a stranger to the relationships between Avid Telecom and its carriers and customers, including the referenced vendor.

63.   Following the publication of the false statements, Avid Telecom received a communication from its significant vendor advising that it was terminating its relationship with Avid Telecom.  The communication represented that the termination was the direct byproduct of the false allegations that Avid Telecom was engaging in deceptive and/or illegal activity.

64.   Avid Telecom had derived a substantial economic benefit from its business relationship with the lost vendor.

65.   As a direct and proximate result of Defendant's tortious interference, Avid Telecom has suffered, and will continue to suffer, damages in an amount yet to be determined but reasonably believed to be in excess of $75,000.

66.   Defendant's conduct was willful, wanton, and oppressive or was undertaken with the entire want of care that would raise the presumption of conscious indifference to consequences.  Defendant further acted, or failed to act, with specific intent to cause harm to Plaintiffs, including harm to their rights and

business and personal reputations. Avid Telecom is, therefore, entitled to an award of exemplary and punitive damages under O.C.G.A. § 51-12-5.1(b), which it so requests.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Actual and Prospective Contractual Relationships- Avid Telecom)

67.    Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

68.    Avid Telecom was party to an agreement with its significant vendor. Under the terms of that agreement, Avid Telecom delivered calls to the vendor, which either passed the call on to another downstream carrier or terminated the call to the called party.

69.    Defendant published the false statements set forth above.   The publication of these false statements was wrongful and improper and without right or privilege.

70.    The publication of these false statements was done purposefully and maliciously with intent to injure and interfere with Avid Telecom's actual and prospective contractual relationships, including its relationship with the significant vendor referenced above.

71.    Defendant knew or should have known that the publication of the false statements would place Avid Telecom's contractual relationships with its carriers and its customers, including the referenced vendor, in jeopardy.

72.    Defendant knew or should have known of the contractual relationship between Avid Telecom and its carriers and customers, including the referenced vendor.

73.    Defendant was a stranger to the contractual relationships between Avid Telecom and its carriers and customers, including the referenced vendor.

74.    Following the publication of the false statements, Avid Telecom received a communication from its referenced vendor advising that it was terminating its contractual relationship with Avid Telecom.  The communication represented that the termination was the direct byproduct of the false allegations that Avid Telecom was engaging in illegal robocalling.

75.    Avid Telecom had derived a substantial economic benefit from its contractual relationship with this vendor, and it reasonably expected to continue to derive that economic advantage into the future.  In addition to the continuing economic value of the existing relationship, when the defamatory statements became known to the vendor, Avid Telecom and the vendor had agreed on the terms of a dramatically expanded contractual relationship which would have very substantially

increased the volume of traffic delivered by Avid Telecom to the vendor and thus the economic value of the parties' relationship.  When the vendor terminated its current agreement with Avid Telecom, it also made it known that it would not be executing the new agreement.

76.    As a direct and proximate result of Defendant's tortious interference, Avid Telecom has suffered, and will continue to suffer, damages in an amount yet to be determined but reasonably believed to be in excess of $75,000.

77.    Defendant's conduct was willful, wanton, and oppressive or was undertaken with the entire want of care that would raise the presumption of conscious indifference to consequences.  Defendant further acted, or failed to act, with specific intent to cause harm to Plaintiffs, including harm to their rights and business and personal reputations. Avid Telecom is, therefore, entitled to an award of exemplary and punitive damages under O.C.G.A. § 51-12-5.1(b), which it so requests.

## FIFTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress—Michael Lansky)

78.    Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

79.     The TransNexus Blog contained statements which are demonstrably false as well as the false attribution of those statements to Mr. Lansky. The publication and attribution of these statements was without basis in fact and was either knowingly and intentionally false or it was reckless.

80.     The statements falsely attributed to Mr. Lansky were extreme and outrageous as they suggest that he was engaged in unlawful conduct and in a willful effort to deceive regulatory authorities.

81.     As a direct and proximate result of these statements, Mr. Lansky has suffered a variety of severe and ongoing physical and emotional consequences, including extreme stress, anxiety loss of sleep, lost sense of wellbeing, headaches, stomach disorders and feelings of hopelessness.

82.     As a direct and proximate result of Defendant's intentional infliction of emotional distress, Mr. Lansky has suffered, and will continue to suffer, damages in an amount yet to be determined but reasonably believed to be in excess of $75,000.

83.     Defendant's conduct was willful, malicious, wanton, and oppressive or was undertaken with the entire want of care that would raise the presumption of conscious indifference to consequences. Defendant further acted, or failed to act, with specific intent to cause harm to Mr. Lansky, including harm to his rights and

emotional health. Mr. Lansky is, therefore, entitled to an award of exemplary and punitive damages under O.C.G.A. § 51-12-5.1(b), which he so requests.

## SIXTH CLAIM FOR RELIEF
### (Expenses of Litigation under O.C.G.A § 13-6-11)

84.    Plaintiffs incorporate each of the above paragraphs as if fully set forth herein.

85.    Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused Plaintiffs unnecessary trouble and expense.

86.    Plaintiffs therefore are entitled to recover their reasonable attorneys' fees and expenses of litigation under O.C.G.A § 13-6-11.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court find in their favor and against Defendant, TransNexus, and that the Court grant Plaintiffs the following relief:

(a)    An adjudication that Defendant TransNexus is liable to Plaintiffs as stated in Counts One through Six above;

(b)    An award of damages sufficient to compensate Plaintiffs for

24

Defendant's actions, in an amount to be determined at trial;

(c)    An award of exemplary and punitive damages to Plaintiffs under O.C.G.A. § 51-12-5.1(b), in an amount to be determined at trial;

(d)    An award of attorneys' fees and costs under O.C.G.A. § 13-6-11 and other applicable law, plus future attorneys' fees and costs;

(e)    An award of post-judgment interest to Plaintiffs; and

(f)    Such other and further relief as the Court may deem just and proper under the circumstances.

This 7th day of December, 2022.

/s/ Amanda G. Hyland
Amanda G. Hyland
Georgia Bar No. 325115
ahyland@taylorenglish.com
Todd E. Jones
tjones@taylorenglish.com
Georgia Bar No. 403925

TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Phone: (770) 434-6868
Facsimile: (770) 434-7376

*Attorneys for Plaintiffs*